IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DANIEL GREENBERG,

                         Plaintiff,                    Case No. 3:12 CV 1848

    -vs-

                                                    MEMORANDUM OPINION

CITY OF SYLVANIA, et al.,

                         Defendant.

KATZ, J.

      Plaintiff Daniel Greenberg, resident of Sylvania, Ohio, sued the City of Sylvania, the Mayor, Craig Stough, and the Zoning Administrator, Robert Oberly, after Plaintiff was threatened with an "illegal sign" citation for placing a temporary political campaign sign in the front yard of his home. The matter is currently before the Court on Defendants' motion to dismiss for lack of standing, or alternatively, for summary judgment. Plaintiff opposes Defendants' motion to dismiss, and also asks the Court to defer or deny Defendants' summary judgment motion pursuant to FED. R. CIV. P. 56(d) until such time as the parties complete discovery.

      For the reasons stated herein, Defendants' motion to dismiss is granted in part and denied in part. Further, the Court will grant Plaintiff's Rule 56(d) request and therefore deny Defendants' summary judgment motion with leave to re-file upon completion of discovery.

**I. Background**

      On July 6, 2012, Plaintiff placed a small political sign in the front yard of his home. The sign advocates the re-election of President Obama and Vice President Biden in the November 6, 2012 national election.[1] On July 11, Defendant Oberly, in his capacity as Zoning Administrator,

---

[1] The sign reads in pertinent part, "OBAMA BIDEN," and also contains a stylized logo and
                                                                                                  (continued...)

went to Plaintiff's home and personally instructed Plaintiff to remove the sign because it violated the City's Sign Regulations, (hereinafter, "Sign Regulations"), which prohibits exhibition of temporary signs more then seventy days prior to, or seven days after, the event to which the sign relates. Oberly further informed Plaintiff that if he did not remove the sign he would be subject to criminal citation and a fine (a violation of the Sign Regulation carries penalties of up to a $1,000 fine and thirty days in jail).

Plaintiff took down the sign as a result of Oberly's warning, but Plaintiff put the sign back up two days later on July 13. Then, on July 16, Plaintiff found a written notice posted on his door indicating that his property contained an "Illegal Sign." The notice further warned that "[f]ailure to acknowledge or correct [within forty-eight hours] will result in citation." (Doc. 1-3).

Plaintiff subsequently filed the instant 42 U.S.C. §1983 action on July 18, 2012, seeking damages, a temporary restraining order, preliminary and permanent injunctions, and a declaratory judgment that the Sign Regulations' seventy-seven day rule, as applied to Plaintiff, violates his *First Amendment* right to free speech. *See 44 Liquormart v. Rhode Island*, 517 U.S. 484, 488 n.1 (1996) (*First Amendment* right to free speech incorporated against states by *Fourteenth Amendment*). Plaintiff subsequently amended his complaint to add a facial challenge to the seventy-seven day rule, as well as facial and as-applied challenges to the Sign Regulations' permit requirement, the discretion delegated to the City's Board of Architectural Review in issuing

---

[1](...continued)
reference to the website "BARACKOBAMA.COM." (Pltf's. Compl., Ex. 2, Doc. 1-2). The sign does not specifically reference the November 6 election, but Plaintiff contends that the sign "was intended to and reasonably understood to advocate for the re-election of the President and Vice-President at the November 6, 2012 national election." (Pltf's. Opp. to Defs'. Mo. Dismiss, Doc. 12 at 4).

permits, the discretion exercised in designating seventy-seven days as a "reasonable period," and the limitation on the number of Campaign Political Temporary Signs that can be displayed. Further, the amended complaint seeks a declaration that Plaintiff's *Fourteenth Amendment* right to equal protection was violated by unequal enforcement of the Sign Regulation.

In a July 23, 2012 status conference the parties agreed to maintain the status quo–Plaintiff may keep the sign in his yard, and the City will not cite him–pending motion practice and a hearing on Plaintiff's preliminary injunction request. (Doc. 9). Accordingly, Defendant filed the instant motion to dismiss for lack of standing, as well as the instant motion for summary judgment.

## II. Motion to Dismiss Standard

While Defendants style their challenge to Plaintiff's standing as a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, the Court construes Defendants' motion as a FED. R. CIV. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See Roberts v. Hamer*, 655 F.3d 578, 580-81 (6th Cir. 2011) (challenge to existence of constitutional standing is jurisdictional question properly raised by Fed. R. Civ. P. 12(b)(1)).

Generally, a FED. R. CIV. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction falls into one of two categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) *cert. denied*, 513 U.S. 868 (1994); *see also Wenz v. Rossford Ohio Transp. Improvement Dist.*, 392 F.Supp. 2d 931, 934 (N.D. Ohio 2005). A facial attack challenges the sufficiency of the pleading itself, and requires the Court to take all of the material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Ritchie*, 15 F.3d at 598 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37

3

(1974)). In contrast, a factual attack challenges the factual existence of subject matter jurisdiction, *Ohio Hosp. Ass'n v. Shalala,* 978 F.Supp. 735, 739 (N.D. Ohio 1997), and requires a court to "weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Thus, whereas a facial attack requires the Court to accept Plaintiff's allegations as true, a factual attack precludes any assumption of truthfulness and allows the Court to weight the evidence.

In the instant matter, Plaintiff contends that Defendants' invocation of Rule 12(b)(6)–though the incorrect rule for challenging constitutional standing–evinces Defendants' intent to bring a facial attack. *See Thurman v. Pfizer, Inc*., 484 F.3d 855, 859 (6th Cir. 2007) (Rule 12(b)(6) requires courts to accept a plaintiff's factual allegations as true). Indeed, Defendants appear content not to dispute the facial/factual distinction, stating that "[t]his issue . . . is esentially moot, as the factual allegations of the Plaintiff's pleadings and representations of his Memorandum as cited herein, are sufficient to support the arguments of the Defendants." (Def.'s Reply in support of Mo. Dismiss, Doc. 15 at 4) (hereinafter, "Def's. Reply"); *cf. In re CP Ships Ltd. Secs. Litig.*, 578 F.3d 1306, 1312-1313 (11th Cir. 2009) (finding tantamount admission of facial challenge to subject matter jurisdiction). Despite this, the Court will examine the instant motion as a factual challenge to subject matter jurisdiction since, as discussed below, a factual standard enables consideration of affidavits and declarations that both parties have filed and argued in their briefs.

**III. Analysis of Plaintiff's Standing**

4

To demonstrate standing under Article III of the Constitution, "a plaintiff must establish three elements: "(1) an injury in fact that is concrete and particularized; (2) a connection between the injury and the conduct at issue, meaning that the injury must be fairly traceable to the defendant's action; and (3) a likelihood that the injury would be redressed by a favorable decision of the court." *H.D.V.–Greektown, LLC v. City of Detroit*, 568 F.3d 609, 616 (6th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). At issue in the instant matter is whether Plaintiff can demonstrate a concrete injury. The Court will therefore examine Plaintiff's alleged injuries, bearing in mind that Plaintiff must demonstrate injury as to each provision of the Sign Regulations that he is challenging. *Midwest Media Prop., LLC v. Symmes Twp.*, 503 F.3d 456, 464 (6th Cir. 2007); *see also Tini Bikinis-Saginaw, LLC v. Saginaw Charter Twp.*, 836 F. Supp. 2d 504, 522-23 (6th Cir. 2011) (quoting *id.*); *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 351-53 (6th Cir. 2007) (no standing to challenge provisions of ordinance by which plaintiff was not injured, even though plaintiff established injury under other provisions).

Before determining whether Plaintiff has established an injury, it is necessary to articulate the relevant provisions of the Sign Regulations that give rise to the matter. Chapter 1166 of the City of Sylvania's Planning and Zoning Code enumerates the City's "Sign Regulations." The parties agree that the yard sign at issue is a "Temporary Sign" as defined by Section 1166.04(pp):

> (pp) <u>Temporary Sign</u>. Any sign not intended for permanent installation, such as promotional and street banners and signs at construction sites. They may also be incidental or miscellaneous in nature, such as political campaign temporary signs and real estate signs.[2]

---

[2]

Additionally, Plaintiff's yard sign meets Section 1166.04(hh)'s definition of a "Political Campaign Temporary Sign": "Freestanding temporary signs advocating or opposing a candidate for public office or a position on an issue to be determined at an election." It is not necessary to articulate a

(continued...)

Generally, per Section 1166.07(h), all Temporary Signs require a permit unless specifically identified by another section as being allowed without a permit:

> 1166.07 STANDARDS FOR PERMITTED SIGNS
>
> (h) <u>Teorary Signs</u>.
>
> (1) <u>General Requirements</u>.
>
> A. Permit Required. Unless specifically identified as not requiring a permit in Section 1166.03, all temporary signs shall require a sign permit.

Accordingly, Section 1166.03(b) enumerates those Temporary Signs that are allowed without a permit, with Section 1166.03(b)(14) containing the seventy-seven day temporal allowance at the heart of the instant matter. Specifically, Section 1166.03(b)(14) allows certain event-related Temporary Signs to be displayed without a permit if done so within a "reasonable period," which is defined as seventy days prior to the event, or seven days after the event:

> 1166.03 PERMIT REQUIRED
>
> (a) All signs and temporary signs erected, placed, constructed or modified within the City, except those specifically excluded in this chapter, shall secure a permit pursuant to the provisions of this chapter . . . .
>
> (b) The following specific types of signs are allowed in all areas of the City and do not require a permit:
>
> (14) Temporary Signs that conform to the requirements of Section 1166.07(h) and are less than or equal to nine

---

[2](...continued)
relationship between the two definitions at this stage of the litigation, as the sections of the Sign Regulations relevant to a determination of Plaintiff's standing reference "Temporary Signs," not "Political Campaign Temporary Signs."

> (9) square feet in size **may be displayed for a reasonable period. A reasonable period of display for Temporary Signs which refer to or are related to a specific event or occurrence shall not exceed seventy (70) days prior to and seven (7) days after the event or occurrence to which the Temporary Sign pertains**. This allowance shall not apply to banners, promotional banners, construction signs, future development signs, portable commercial signs, other Temporary Signs with a commercial message and other Temporary Signs larger than nine (9) square feet in size . . . .

(emphasis added). Likewise, by operation of the previously described Sign Regulations sections, (§ 1166.07(h)(1)(A) and § 1166.03(a)), one must obtain a permit to display an event-related Temporary Sign outside the seventy-seven day allowance.

To obtain a permit, one follows the procedures outlined in Section 1166.15(a), which require, *inter alia*, a fifteen dollar fee and a written application. Further, as part of the permitting process, Section 1166.15(a) details a system by which the City's Board of Architectural Review determines the appropriateness of the request and decides whether to direct the Zoning Office to issue a permit. *See generally* Sign Regulations § 1166(a)(2)(D).

With these provisions in mind, the Court turns to an assessment of Plaintiff's alleged injuries. First, with regard to Plaintiff's challenges to the seventy-seven day allowance (§ 1166.03(b)(14)), the permit requirement for signs outside the seventy-seven day allowance (§ 1166.07(h)(1)(A); § 1166.03(a)), the discretion exercised in determining seventy-seven days to be a reasonable period (§ 1166.03(a)), and the permitting discretion delegated to the City's Board of Architectural Review (§ 1166(a)(2)(D)), the Court agrees that Plaintiff was injured by Defendants' oral and written warnings that threatened citation. While Defendants argue that Plaintiff was not injured because he was not actually cited, it is well settled that a credible threat of prosecution,

7

coupled with an intention to engage in conduct giving rise thereto, constitutes a concrete injury sufficient to confer standing. *Steffel v. Thompson*, 415 U.S. 452, 458-59 (1974); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *Berry v. Schmidt*, ___ F.3d ___, 2012 WL 3047238, at *2 (6th Cir. July 27, 2012); *McGlone v. Bell*, 681 F.3d 718 (6th Cir. 2012) (quoting *Steffel*, 415 U.S. at 459) ("Plaintiff is not required to 'first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.'")

Defendants unpersuasively attempt to argue that the threat of prosecution was not credible because it was possible that Plaintiff could have been charged civilly instead of criminally. *See* Sylvania Codified Ordinances § 163.01 *et. seq.*, Doc. 15-1 (charge of civil offense precludes arrest and limits fines for initial offenses to seventy-five dollars, subject to a fifty percent reduction if corrected within ten days). Defendants claim that Plaintiff knew of the separate civil offense provision because Plaintiff attached to his complaint the entire Sign Regulations Chapter, which includes an "Enforcement and Penalties" provision. § 1166.15(e). Defendants argue that knowledge of the Enforcement and Penalties provision in-turn evinces knowledge that Plaintiff could have been charged civilly instead of criminally, and that such knowledge renders Plaintiff's fears of criminal prosecution merely "imaginary or speculative." *See Younger v. Harris*, 401 U.S. 37, 42 (1971) ("persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs."). But even accepting Defendants' assertion that Plaintiff knew of the possibility for a civil citation,[3] the Court does not see how such

---

[3]

The Court is unable to gauge the plausibility of Defendants' contention that Plaintiff knew he may only be subject to civil citation. According to Defendants, the basis of Plaintiff's putative

(continued...)

8

knowledge negates the credible threat of criminal prosecution where, as here, the City's Zoning Administrator personally knocked on Plaintiff's door and told Plaintiff he would be subject to criminal citation if he failed to comply with the Sign Regulations. Plaintiff's complaint specifically alleges that Defendant Zoning Administrator Oberly so warned Plaintiff, (Pltf's Amd. Compl., Doc. 10 at ¶9), as does Plaintiff's declaration. (Pltf's. Decl., Doc. 8 at ¶3); *cf. Younger*, 401 U.S. at 42 (threat of prosecution was "imaginary or speculative" where plaintiffs "[did] not claim that they [had] ever been threatened with prosecution, that a prosecution [was] likely, or even that a prosecution [was] remotely possible."). Defendants have offered nothing to negate Plaintiff's allegations and evidence, and the Court therefore finds that the threat of prosecution was sufficiently credible to confer standing.

With regard to Plaintiff's challenge to the permitting discretion delegated to the City's Board of Architectural Review (§ 1166.15(a)(2)(D))–a challenge for which Plaintiff already has standing based on a credible threat of prosecution–the Court agrees that Plaintiff was injured by a combination of the permitting requirement's prior restraint and the discretion delegated to the Board. As explained by *City of Lakewood v. Plain Dealer Publishing Co.*, "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." 486 U.S. 750, 755 (1988); *see also G*

---

[3](...continued)
knowledge derives from Sign Regulations Section 1166.15(e), which merely states: "Whoever violates any provision of this chapter shall be subject to the penalties provided in Section 1103.99." Section 1103.99 is an entirely separate Chapter of the City's Planning and Zoning Code, which Plaintiff did not attach to his complaint, and which Defendants have not included in the record. Thus, it is unclear the extent to which Plaintiff may have known that he may be subject to civil citation.

*& V Lounge v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1075 (E.D. Mich. 1994) (citing *id.*).  In the instant matter, the parties do not offer extensive case law analysis regarding when discretion is so "unbridled" as to constitute injury, but the Court is satisfied at this juncture that Plaintiff has been injured.  Specifically, the Court notes that the Board's discretion includes consideration of whether the sign will "promote, preserve, and enhance the architectural character of the . . . premises upon which it will be erected, as well as the community where the premises is located." § 1166.15(a)(2)(D)(1)(a).  The Board's discretion also includes a determination of whether "[t]he sign plan aesthetic and economic contextual factors of the proposed sign . . . conform to design review standards and guidelines adopted in Sylvania regarding [several enumerated factors.]"  *Id.* at (D)(1)(b).  As such, the Court finds that Plaintiff has demonstrated an additional, independent injury sufficient to sustain a facial challenge to the Architectural Review Board's discretion.

The Court is not persuaded by Defendants' contention that, notwithstanding any of the above-described injuries, Plaintiff does not have standing to sue until he exhausts administrative remedies.  Defendants rely on analysis from the Sixth Circuit's opinion in *Tini Bikinis-Saginaw, LLC v. Saginaw Charter Twp.*, *supra*, as well as on the *Tini Bikinis* court's discussion of *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985).  Specifically, Defendants cite the *Tini Bikinis* court's prerequisite of administrative finality in certain licensing statute challenges, 836 F. Supp. 2d at 518-19, to argue that Plaintiff has not been injured until such time as he applies for and is denied a license.  Defendants' analysis is inapposite, however, as the portion of *Tini Bikinis* upon which Defendants rely deals with

10

ripeness, not standing. *See id*. at 515-19, 522-24 (conducting independent analyses of ripeness and standing).[4]

For the foregoing reasons, Plaintiff has standing to challenge the Sign Regulations' seventy-seven day allowance (§ 1166.03(b)(14)), the permit requirement for signs displayed outside the seventy-seven day allowance (§ 1166.07(h)(1)(A); § 1166.03(a)), the discretion exercised in determining seventy-seven days to be a reasonable period (§ 1166.03(a)), and the permitting discretion delegated to the City's Board of Architectural Review (§ 1166(a)(2)(D)). There remains an issue, however, as to whether Plaintiff has standing to challenge the Sign Regulations' limit on the number of Temporary Signs that may be displayed. In the instant matter, the Court finds that Plaintiff does not have standing for this claim. Plaintiff has not alleged any facts or introduced any evidence explaining how the limit on the number of signs affects him, let alone injures him. *See Prime Media*, 485 F.3d at 352-53 (even where plaintiff demonstrated standing to challenge certain statutory provisions, plaintiff lacked standing to challenge laundry list of other provisions that had nothing to do with plaintiff's circumstances). Therefore, Plaintiff's challenge against the limit on the number of Temporary Signs that may be displayed is dismissed.

**IV. Defendants' Summary Judgement Motion**

Plaintiff moves the Court to defer or deny Defendants' summary judgment motion pursuant to FED. R. CIV. P. 56(d) until such time as the parties complete discovery. The Court

---

[4] To the extent Defendants are challenging ripeness, the Court is satisfied at this juncture with the ripeness of Plaintiff's claims.

accepts the declaration of Plaintiff's counsel as to the need for discovery, (Doc. 13), and therefore denies Defendants' summary judgment motion with leave to re-file upon completion of discovery.

## V. Conclusion

For the reasons stated herein, Defendants' motion to dismiss is granted in part and denied in part. (Doc. 11). Further, pursuant to FED. R. CIV. P. 56(d), Defendants' summary judgment motion is denied with leave to re-file upon completion of discovery. (Doc. 11).

IT IS SO ORDERED.

                                                    s/ *David A. Katz*
                                                    DAVID A. KATZ
                                                    U. S. DISTRICT JUDGE